IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARY L. OBORNY, et al.                      )
                                            )
            Plaintiffs,                     )
                                            )
v.                                          )     Case No.: 6:21-CV-01290
                                            )
JEFF A. MOHAJIR,                            )
                                            )
            Defendant.                      )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiffs, through their undersigned attorneys Baker Sterchi Cowden & Rice LLC, and for their Response to Defendant's Motion to Compel Arbitration or Alternatively to Dismiss for Failure to State a Claim, request the Motion to Compel Arbitration be denied because there is no agreement between the parties which requires arbitration.  Plaintiffs also request the alternative Motion to Dismiss be denied because the Complaint, as pled and taking all allegations as true, does properly state legally sufficient claims.

I.      **Introduction and Summary of Argument.**

This is a commercial dispute involving oil and gas interests located in Oklahoma which were supposed to be transferred into a new company as part of an investment opportunity, but were instead held hostage by Defendant for his own personal gain at the expense of his business investors.

40 Energy, LLC is a Kansas company formed in late 2020 by a group of investors to assume ownership interests in certain oil and gas assets. Plaintiffs, aside from Plaintiff Gary Oborny, constitute the majority of 40 Energy's members. 40 Energy is managed by another company called

1

Ascent Management Group, LLC, which is comprised of two members: Plaintiff Gary Oborny and Mohajir Energy Advisors, Inc.

Prior to 40 Energy's creation, Plaintiff Oborny and Defendant Mohajir solicited investors, many of whom are now plaintiffs to this action. Part of this pitch included a representation that 40 Energy's assets would include certain operating oil wells which were at the time owned by Defendant Mohajir, that are referred to as the "Revelation Assets."  These Revelation Asset interests were to be poured into Ascent, which was to then pour them into 40 Energy.

The core problem is that despite Defendant Mohajir's promises, the Revelation Assets were never transferred into Ascent, and because they were not transferred into Ascent could not be transferred into 40 Energy. Defendant Mohajir has continually refused to honor his obligations, thereby harming Plaintiffs.

Defendant Mohajir's Motion to Compel Arbitration or Alternatively Dismiss for Failure to State a Claim should be denied. As explained more fully below, neither of two arbitration agreements at issue apply because there were not entered into *by any party to this lawsuit*. Plaintiffs have the right to bring this cause of action before a jury, and Defendant's Motion is essentially an effort to deny Plaintiffs a right to trial.  Absent from Defendant's Motion is any discussion of why claims brought by those who are not parties to the agreements, that include actions outside of the agreements which only Defendant alleges applies, should be forced into an arbitration.  The Complaint states a claim for breach of oral contract, breach of fiduciary duty, negligent misrepresentation, intentional interference with a business expectancy, quantum meruit, and unjust enrichment.  It is improper for Defendant to attempt to force party plaintiffs into an arbitration when there was no such agreement between all parties.  Defendant's Motion should be denied.

Defendant's argument that Plaintiff Oborny had a 51% voting interest in Ascent is of no consequence because Ascent never had the Revelation Assets so they could not be poured into 40 Energy.  Had Mohajir done what he promised, the present lawsuit would not be necessary.

## II.    There is no arbitration agreement which applies to these specific claims made by these specific Plaintiffs.

Arbitration can be compelled only upon a showing that "(1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement." *Austin v. J.C. Penney Corp.*, No. 2:18-CV-02207-JAR-TJJ, 2019 U.S. Dist. LEXIS 45, at *3 (D. Kan. Jan. 2, 2019). Defendant's Motion fails both of these prongs.  Even though a presumption of arbitrability may arise when a contract contains an arbitration provision, such presumption "disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).  Defendant has not placed before this Court a valid arbitration agreement signed by all of the parties.

Defendant erroneously asserts that arbitration can be compelled under one of two written contracts: the operating agreement for 40 Energy, LLC or the operating agreement for Ascent Management Group, LLC. The fatal flaw in Defendant's argument is that neither of those contracts were made between the parties to this litigation.

### a.  The 40 Energy operating agreement's arbitration provision is inapplicable

#### i.  Defendant Mohajir does not have standing to invoke the Agreement's arbitration provision.

Subject to "limited exceptions," this District has recognized that "Ordinarily, a non-party to an arbitration agreement is not bound by the agreement." *Housh v. Dinovo Invs.*, No. 02-2562-KHV, 2003 U.S. Dist. LEXIS 3707, at *15 (D. Kan. Mar. 7, 2003). This must be the case, as arbitration agreements are fundamentally matters of contract and "a party cannot be required to

3

submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418 (1986).

Here, the signatories to the 40 Energy Operating Agreement are (1) non-party Ascent Management Group, LLC, (2) Plaintiff Elliot F. Lekawa Trust, (3) Plaintiff Muth Properties, LLC, (4) Plaintiff Colby Sandlian Revocable Trust No. 2, (5) Plaintiff Dennis Ross Living Trust, (6) Plaintiff Mitchell R. Hoefer Trust, (7) Plaintiff George H. Waitt III, (8) Plaintiff Fadi F. Estephan, (9) non-party SMRH2, LLC, (10) non-party Thomas H. Freeman Revocable Trust, (11) non-party 40 Energy LRLT Holdings, LLC, and (12) non-party 40 Energy Investors, LLC. *40 Energy Operating Agreement*, attached as **Exhibit 1**. Defendant Mohajir does not appear anywhere on this list.[1] The "limited exceptions" to the general rule that non-signatories cannot be bound by an arbitration provision extend only to third-party beneficiaries, successors-in-interest, or agents of a party bound by arbitration. *Housh*, 2003 U.S. Dist. LEXIS 3707, at \*15. As is discussed below, none of these exceptions apply.

> 1. *Defendant Mohajir is not a third-party beneficiary to the 40 Energy Operating Agreement.*

The Court looks at the arbitration agreement's plain language to determine whether there are any third-party beneficiaries. *See Guinn v. Cedarhurst Living, LLC*, No. 18-2182-DDC-KGG, 2018 U.S. Dist. LEXIS 182341, at \*9 (D. Kan. Oct. 24, 2018) ("And the agreement contains no language manifesting that the parties intended to define the 'Company' to include any successor-in-interest or the current defendant."). There is no language in the arbitration agreement which can reasonably be construed as extending its terms to anyone other than 40 Energy's members. It instead contemplates claims "by the *parties*" and characterizes it as an agreement "by the

---

[1] It is irrelevant that Defendant Mohajir signed the 40 Energy Operating Agreement on Ascent Management Group's behalf as one of its managers. Signing an arbitration agreement in a representative capacity is insufficient to bind the representative. *See Genberg v. Porter*, 566 F. App'x 719, 722 (10th Cir. 2014).

members." **Exhibit 1**, ¶ 11.2. Importantly, the arbitration agreement does not mention *members of the parties* or *members of the members*, which is the sole connection Defendant Mohajir has to the parties or members. As a result, there is no indication that the arbitration clause was intended to extend to Defendant Mohajir individually under a third-party beneficiary theory.  Defendant essentially and improperly asks the Court to re-write the amended operating agreement.

2. *Defendant Mohajir is not a successor-in-interest to Ascent Management Group, LLC.*

There is no allegation by any party that any interests in 40 Energy were assigned, thus making the successor-in-interest exception inapplicable on its face.

3. *Defendant Mohajir status as an agent of Ascent Management Group, LLC does not give rise to Plaintiffs' claims.*

It is true that Defendant Mohajir individually is one of two managers of non-party Ascent Management Group, and in that capacity, could be considered an agent of the company. *See Ascent Operating Agreement*, attached hereto as **Exhibit 2**, ¶ 5.1, K.S.A. § 17-7693. However, the Complaint does not allege wrongdoing in Defendant Mohajir's capacity as a manager and his agency is thus irrelevant.  What Defendant Mohajir did was outside of his capacity as a manager of Ascent.

At its core, this lawsuit alleges that Defendant Mohajir agreed to transfer the Revelation Assets into Ascent Management Group so they could then be subsequently transferred into 40 Energy. Obviously neither transfer occurred and the Revelation Assets remained under the control of Defendant Mohajir.

In order for Defendant Mohajir to avail himself to the 40 Energy Operating Agreement's arbitration provision, he must show that his wrongdoing as a co-manager of Ascent Management Group related to or arose from the 40 Energy Operating Agreement. *Britton v. Co-Op Banking*

*Grp.*, 4 F.3d 742, 747 (9th Cir. 1993)[2] ("That leads us to the key question: Did any of Liebling's alleged wrongdoing as agent, officer or employee of GDL during this alleged period of time relate to or arise out of the contract containing the arbitration clause?"), *Carr v. Liberty Life Assurance Co.*, No. C05-3190 TEH, 2006 U.S. Dist. LEXIS 114313, at *8-9 (N.D. Cal. June 22, 2006) ("In Britton v. Co-op Banking Group, the Ninth Circuit held that an arbitration clause applies to a nonsignatory agent if the 'alleged wrongdoing as agent . . . relate[s] to or arise[s] out of the contract containing the arbitration clause.'").

This cannot be true for Defendant Mohajir since Plaintiffs' Complaint alleges wrongdoing which is wholly separate and apart from his capacity as co-manager of Ascent. It is undisputed that the Revelation Assets never came under Ascent Management Group's control and that they instead remained with Defendant Mohajir. Thus, Ascent never had the power or ability to transfer the Revelation Assets into 40 Energy, nor could Defendant Mohajir have used his co-managerial authority in Ascent to compel the Revelation Asset because it did not yet belong to Ascent.

The entirety of Defendant Mohajir's wrongdoing occurred outside of his capacity as an Ascent Management Group co-manager. Plaintiffs allege it was Defendant Mohajir who promised to transfer the Revelation Assets, it was Defendant Mohajir who owned the Revelation Assets, and it was Defendant Mohajir repeatedly and wrongfully refused to do so. None of these core allegations implicate his co-managerial position with Ascent Management Group. He therefore cannot use his status as a co-manager of Ascent to compel arbitration under the 40 Energy operating agreement.

---

[2] In *Lutz v. Right Time Holdings, LLC*, this District recognized that *Britton* is applicable despite being from the Ninth Circuit. Nos. 07-1039-JTM, 07-1106--JTM, 2008 U.S. Dist. LEXIS 23324, at *5 (D. Kan. Mar. 21, 2008).

### ii.  Plaintiffs' claims fall outside the arbitration agreement's scope.

Assuming *arguendo* that Defendant Mohajir could prove his standing to enforce the 40 Energy operating agreement's arbitration clause (which he can't), he must also prove that Plaintiffs' claims fall within the clause's scope. Here, the 40 Energy arbitration provision provides in relevant part that "any controversy or claim arising out of or relating to this Agreement, or any breach thereof, which cannot be resolved by the parties in negotiation, shall be settled by binding arbitration." **Exhibit 1**, ¶ 11.2.

"Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (quoting *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996)). The Court must determine whether the allegations in Plaintiffs' Complaint have "some causal connection to—that it originated from, grew out of, or flowed from—" the 40 Energy operating agreement. *Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, No. 20-3193, 2021 U.S. App. LEXIS 27406, at *13 (10th Cir. Sep. 13, 2021). "The mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement." *Jet Airparts, LLC v. Reg'l One, Inc.*, No. 18-CV-1189-EFM-KGG, 2018 U.S. Dist. LEXIS 185451, at *22 (D. Kan. Oct. 30, 2018).

Defendant Mohajir appears to construe the 40 Energy arbitration agreement as encompassing any and all disputes between the parties who are directly or indirectly involved in the operating agreement, but this proposition is easily belied by the arbitration clause's plain language. As it states, a dispute is arbitrable only if it "arise[s] out of or relate[s] to the Agreement." The 40 Energy Operating Agreement merely provides that Ascent Management Group shall

7

transfer the Revelation Assets into 40 Energy—it does not contemplate any transfer by Defendant Mohajir himself. Defendant Mohajir's argument might apply if the arbitration clause applied to any claims related to the *Revelation Assets*, but in reality, it only applies to claims related to the *Agreement*. The Court must interpret the arbitration clause's language as it actually reads, not how Defendant Mohajir wishes it read.

Moreover, a dispute based on occurrences taking place prior to an arbitration agreement being signed cannot fall within the agreement's scope absent express contractual language to the contrary. *Smith v. Swift Transp.*, Co., No. 13-2247-RDR, 2013 U.S. Dist. LEXIS 144542, at *7 (D. Kan. Oct. 7, 2013). While the 40 Energy Operating Agreement was created on December 18, 2020, the Complaint alleges that Defendant Mohajir's promises to transfer the Revelation Assets date back to September of 2020 with the Private Placement Memorandum. *Complaint*, ¶¶ 57-57. Thus, the promise made occurred before the Operating Agreement as even signed.

This Court noted in *Smith* that an arbitration agreement which merely applies to claims made in connection with a written agreement cannot be said to express an intent to also encompass dealings which pre-dated the agreement. *Smith v. Swift Transp.*, Co., No. 13-2247-RDR, 2013 U.S. Dist. LEXIS 144542, at *7 (D. Kan. Oct. 7, 2013). Like the arbitration agreement in *Smith*, the 40 Energy Operating Agreement's arbitration provision contains nothing suggesting the parties intended to sweep any prior dealings into its scope. Defendant Mohajir's Motion to Compel Arbitration can therefore be denied for this reason alone.

In summary, Defendant fails to meet both prongs of what is required.

### b. *The Ascent Management Group Operating Agreement's arbitration provision is inapplicable*

The Ascent agreement's arbitration language cannot justify forced arbitration for many of the same reasons as the 40 Energy arbitration agreement could not, chiefly because it involves different parties and it does not encompass the nature of the claims brought here.

#### i. *Plaintiffs are not party to the Ascent Operating Agreement*

The only signatories to the Ascent Management Group Operating Agreement are its two members, Plaintiff Oborny and non-party Mohajir Energy Advisors, Inc. **Exhibit 2**, p. 17-18. It was also signed by Plaintiff Oborny and Defendant Mohajir in their capacities as co-managers of Ascent. *Id*.  But for purposes of this analysis, it is much more important to identify the people who did *not* sign the arbitration agreement: every single Plaintiff other than Plaintiff Oborny. As noted above, a person who did not agree to be bound by an arbitration agreement cannot be compelled to arbitrate.

#### ii. *Plaintiffs' claims fall outside the scope of the arbitration agreement's scope.*

The Ascent Management Group Operating Agreement's arbitration clause is limited to "any controversy or claim arising out of or relating to this Agreement, or any breach thereof." Defendant Mohajir makes no serious effort to explain exactly how the Complaint's allegations relate to the Ascent Management Group Operating Agreement. Instead, his sole focus is that the claims relate to 40 Energy Operating Agreement. *See Defendant's Motion to Compel Arbitration*, p. 7. To the extent Defendant Mohajir can even be considered as raising the Ascent Operating Agreement as a basis for arbitration, such claims must fail by conducting even a cursory examination of the document.

The Ascent arbitration clause applies only to disputes arising from or related to the operating agreement. And like the 40 Energy Operating Agreement, there is no provision in the Ascent Operating Agreement which requires Defendant Mohajir to assign the Revelation Assets. In fact, the Revelation Assets are never even mentioned in the Ascent Operating Agreement. Quite simply, Defendant Mohajir does not and cannot show a connection between the Ascent Operating Agreement and Plaintiffs' claims. All that is presented by movant is unsubstantiated argument of counsel.

### c. Even if Defendant Mohajir's arguments were correct, Kansas law nonetheless prohibits an order compelling arbitration.

The basis for Defendant Mohajir's Motion to Compel Arbitration is that Plaintiffs' Complaint states causes of action for "management failures or omissions" or a failure to carry out the duties required by either the 40 Energy Operating Agreement or the Ascent Management Group Operating Agreement. (*Defendant's Motion to Compel Arbitration*, p. 7-8). If the Court accepts the premise of Defendant Mohajir's arguments, this alone is sufficient reason to decline to compel arbitration.

Kansas law provides that

> Any action to interpret, apply or enforce the provisions of an operating agreement, or the duties, obligations or liabilities of a limited liability company to the members or managers of the limited liability company, or the duties, obligations or liabilities among members or managers and of members or managers to the limited liability company, or the rights or powers of, or restrictions on, the limited liability company, members or managers, or any provision of this act, or any other instrument, document, agreement, articles of organization or certificate contemplated by any provision of this act, may be brought in the district court.

K.S.A. § 17-7672(a) (emphasis added). No appellate case in Kansas has interpreted this provision as it relates to enforceability of arbitration agreements contained within an operating agreement.

However, the Court need only look at the plain language of the statute in comparison with others in the same act to determine that it should prohibit forced arbitration under these circumstances.

Generally speaking, the Kansas Revised Limited Liability Company Act "is largely a set of default rules, subject to change by the operating agreement." *Investcorp, L.P. v. Simpson Inv. Co., L.C.*, 277 Kan. 445, 455, 85 P.3d 1140, 1146 (2003). If a default rule is subject to waiver or modification by an operating agreement, the relevant statute typically includes language such as "unless otherwise provided." *See*, *e.g.*, K.S.A. §§ 17-76,114; 17-7668; 17-76,116; 17-76,134; 17-7686; 17-76,106.

No similar language is included in § 17-7672(a). In fact, there is no language whatsoever in the statute which suggests the right to utilize a judicial forum to enforce or interpret and operating agreement is subject to waiver or modification. While the statute does use the term "may" which is often construed as permissive rather than mandatory, in this instance the word is best construed as giving the person bringing the action the *option* to file in district court rather than submit to forced arbitration. Nothing in the statute suggests this option may be bargained away through contract.

### III.   Plaintiffs' Complaint states viable causes of action.

"In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." *United States ex rel. Tra v. Fesen*, 403 F. Supp. 3d 949, 957 (D. Kan. 2019). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). For the purpose of analyzing a motion to dismiss, the allegations in the pleading are taken as true.  Plaintiffs' Complaint easily meets this standard.

***Provisions of the 40 Energy Operating Agreement Addressing Ascent Management Group's obligation to transfer the Revelation Assets are irrelevant to Plaintiffs' claims.***

Defendant Mohajir begins by generically stating Plaintiffs fail to state a claim because the 40 Energy Operating Agreement requires Ascent to transfer the Revelation Assets into 40 Energy. Plaintiffs do not dispute that this is what the 40 Energy Operating Agreement states. However, Defendant Mohajir misses the point with his argument because Plaintiffs do not allege that Defendant Mohajir breached said operating agreement. Rather, Plaintiffs assert he breached other obligations independent from the 40 Energy Operating Agreement. Defendant Mohajir cannot use the contractual obligations of other parties to escape liability from his own breaches of his independent obligations.  Moreover, his argument is nonsensical because Defendant Mohajir never transferred the Revelation Assets into Ascent, so they could not be transferred into 40 Energy. Defendant's Motion is an attempt to improperly conflate issues.

***Plaintiffs' Complaint states a claim for breach of oral contract.***

Defendant Mohajir's argument on this issue misses the point in that it incorrectly assumes his oral promises were later merged into a written contract between the parties. As noted above, there is no direct contract between Plaintiffs and Defendant. There are contracts between Plaintiff and Ascent (the 40 Energy Operating Agreement), and there is a contract between Plaintiff Oborny and one of Defendant Mohajir's related companies (the Ascent Management Group Operating Agreement), but there is no contract involving Defendant Mohajir individually.

Defendant's Motion to Dismiss claims the oral contract alleged in Plaintiffs' Complaint was merged with the 40 Energy Operating Agreement (Defendant's Motion to Dismiss, p. 15). Defendant Mohajir admits, the 40 Energy Operating Agreement merely required the "*Manager*" to transfer the Revelation Assets into 40 Energy. As used in the 40 Energy Operating Agreement,

12

"Manager" referred to Ascent Management Group—*not* Defendant Mohajir. **Exhibit 1**, p. 2. Since there was no written contract memorializing Defendant Mohajir's oral promises, there is no writing into which they could be merged.

Whatever Ascent Management Group's contractual obligations are, they are not synonymous with Defendant Mohajir's obligations. This becomes obvious when one considers that the Revelations Assets were under Defendant's control and that he was the only party with authority to make the transfer. Plaintiffs' Complaint squarely alleges that Defendant Mohajir himself undertook an obligation to transfer the Revelation Assets. He has continually refused to do so and he cannot use Ascent Management Group as a scapegoat to shirk his own liability.

### *Plaintiffs' Complaint states a cause of action for intentional interference with a prospective business advantage.*

At a high level, Plaintiffs' Complaint alleges that Plaintiffs had business expectancy that Ascent Management Group would transfer the Revelation Assets into 40 Energy. This was memorialized in the 40 Energy Operating Agreement. **Exhibit 1**, ¶ 3.2. Indeed, Defendant Mohajir's myopic focus on Ascent's contractual obligations is precisely why Plaintiffs state a claim for intentional interference with a business expectancy: because Defendant Mohajir—a non-party to the contract between Ascent and Plaintiffs—intentionally and repeatedly refused to honor his promises to transfer the Revelation Assets. In that sense, Defendant Mohajir's performance was the critical stepping stone to Ascent performing its obligations owed to Plaintiffs. Without Defendant Mohajir's performance, the chain of performance broke at the first link.

The key fact that Defendant Mohajir overlooks is that Ascent Management Group never owned the Revelation Assets and had neither the legal right nor ability to transfer them into 40 Energy. His Motion to Dismiss tries to muddy the waters by characterizing Plaintiffs' claims as being based on his status as "an 'insider' to the contractual relations among Plaintiffs, 40 Energy,

and Ascent." *Defendant's Motion to Dismiss*, p. 17. But this characterization is nothing more than smoke and mirrors and misses the point of the lawsuit entirely. Rather than being based on his status as co-manager of Ascent, the claims here emanate from his status as the owner of the Revelation Assets and the only person with the power and authority to cause their transfer into 40 Energy. The fact that he co-managed Ascent is a mere fortuity for purposes of Plaintiffs' claim for intentional interference with a business expectancy.

As it relates to the Services Agreement for which Plaintiffs were grossly overcharged, Defendant Mohajir's sole basis for dismissal appears to be that he acted without malice. However, Kansas courts have acknowledged that "the Restatement (Second) of Torts § 767 (1977) does not speak in terms of privilege or justification; rather, the Restatement refers to tortious conduct as 'improper.'" *M W., Inc. v. Oak Park Mall, L.L.C.*, 44 Kan. App. 2d 35, 57, 234 P.3d 833, 848 (2010). The determination of impropriety involves an analysis of seven factors, including "the nature of the actor's conduct," "the actor's motive," "the interests sought to be advanced by the actor," and "the relations between the parties." *Turner v. Halliburton Co.*, 240 Kan. 1, 14, 722 P.2d 1106, 1116 (1986).

Plaintiffs' Complaint alleges that Defendant Mohajir took advantage of the trust placed in him by Plaintiffs and overcharged for his management services by a factor of nearly three—all so he could line his own pockets at Plaintiffs' expense. While Plaintiffs contend the factual circumstances alone are sufficient to infer the impropriety necessary to create a claim for intentional interference with a business perspective, they are also cognizant that "the issues of defendants' motive and the presence or absence of malice are typically questions for the jury." *Id*. at 56. Since Plaintiffs have plausibly plead a cause of action against Defendant Mohajir, a motion

14

to dismiss should be denied and any issues about the sufficiency of the facts should be left for summary judgment or trial.

### *Plaintiffs' Complaint states a cause of action for negligent misrepresentation.*

The Kansas Supreme Court has expressly adopted negligent misrepresentation claims based on § 552 of the Restatement (Second) of Torts. Consequently, the tort of negligent misrepresentation "includes negligent supply of commercial information to others for guidance in their business transactions." *Gerhardt v. Harris*, 261 Kan. 1007, 1019, 934 P.2d 976, 984 (1997). All that is required is that a plaintiff prove "the defendant failed to exercise reasonable care or competence to obtain or communicate true information." *Mahler v. Keenan Real Estate*, 255 Kan. 593, 604, 876 P.2d 609, 616 (1994) (citing *Huttegger v. Davis*, 599 S.W.2d 506, 514 (Mo. 1980) (Welliver, J., dissenting)).

It is apparent from the pleadings that when Defendant Mohajir represented the Revelation Assets would be transferred, he intended to guide Plaintiffs in their investing decisions. Such representations were included in the Private Placement Memorandum for the clear purpose of enticing Plaintiffs to invest their money in 40 Energy. *See generally*, Complaint ¶¶ 57-61. Since plaintiffs' allegations are permissible under § 552 of the Restatement (Second) as adopted by *Mahler*, Defendant Mohajir's motion should be denied.

### *Plaintiffs' Complaint states a cause of action for quantum meruit and/or unjust enrichment.*

Defendant Mohajir's sole argument on this issue is that a plaintiff cannot pursue contract-based actions simultaneously with quasi-contract theories such as unjust enrichment or quantum meruit. While this is true, his argument ignores the well-established fact that Plaintiffs may plead in the alternative at this stage. *See*, *e.g.*, *Delcavo v. Tour Res. Consultants, LLC*, No. 21-2137-JWL, 2021 U.S. Dist. LEXIS 186376, at *7 (D. Kan. Sep. 29, 2021) ("Accordingly, the existence

of a valid contract governing the issue is not undisputed, and there is no basis to prohibit plaintiff's alternative pleading at this stage"), *Charbonneau v. Mortg. Lenders of Am., L.L.C.*, No. 18-2062-CM-KGS, 2018 U.S. Dist. LEXIS 206023, at *4 (D. Kan. Dec. 6, 2018) ("Courts have also allowed parties to bring alternative claims for quantum meruit in unpaid wage cases"). Unless and until Defendant Mohajir admits he was contractually bound to transfer the Revelation Assets, Plaintiffs may plead contract and quasi-contract in the alternative. *See Bettis v. Hall*, No. 10-2457-JAR, 2011 U.S. Dist. LEXIS 40884, at *12 (D. Kan. Apr. 14, 2011). Defendant's Motion to Dismiss should be denied.

### Plaintiffs' Complaint states a claim for breach of fiduciary duty.

Plaintiffs' breach of fiduciary duty claim is an alternative claim for relief. To the extent Defendant claims the 40 Energy or Ascent agreements apply (which he clearly does based on his arbitration applies arguments), then Defendant Mohajir has a fiduciary duty. Kansas law is clear that "the existence of a fiduciary relationship is a question of fact." *Bank of Am., N.A. v. Narula*, 46 Kan. App. 2d 142, 172, 261 P.3d 898, 918 (2011). Having squarely alleged the existence of a fiduciary duty between Plaintiffs and Defendant Mohajir, the claims should be allowed to proceed to discovery. As this Court is aware, a motion to dismiss is not the proper time to make factual determinations.

More to the point, the 40 Energy Operating Agreement plainly provides that the manager's fiduciary duties include "(1) a duty to act in good faith" and "(2) a general obligation of fair dealing with respect to the company and its business." **Exhibit 1**, ¶ 5.3. Fiduciary duties therefore unquestionably exist between the parties. Even if Defendant Mohajir's fiduciary duties were contractual creations, a tort action may still exist for their breach. *Universal Premium Acceptance Corp. v. Oxford Bank & Tr.*, 277 F. Supp. 2d 1120, 1123 (D. Kan. 2003) ("a party may be liable

in tort for breaching an independent duty toward another, even where the relationship creating such a duty originates in the parties' contract").

While Defendant Mohajir takes the position that his breaches of these duties overlap with Plaintiffs' claims for breach of contract, this Court has previously acknowledged that "the Kansas Supreme Court has allowed litigants to bring tort and contract claims based on common facts." *Pipeline Prods. v. Horsepower Entm't*, No. 15-4890-KHV, 2017 U.S. Dist. LEXIS 168206, at *8 (D. Kan. Oct. 11, 2017). "A tort claim's independence and survival depends on whether the claim is based on a contractually defined duty." *Universal Premium Acceptance Corp.,* 277 F. Supp. 2d at 1130.

As for Defendant Mohajir's failure to transfer the Revelation Assets, there is no provision in neither the 40 Energy Operating Agreement nor the Ascent Operating Agreement which requires him to make the transfer. There is therefore no provision of either written agreement which could serve as a basis for breach of contract and the breach of fiduciary duty claim must arise independently of any contract claims. And with respect to Plaintiffs claim for breach of oral contract, Plaintiffs must be allowed to plead such claim in the alternative to their tort claims unless Defendant Mohajir admits on the record he had a contractual obligation to transfer the Revelation Assets to 40 Energy.

As for Defendant Mohajir's self-dealing by hiring his own company at exorbitant prices, he correctly cites provisions of the Ascent Operating Agreement which permits certain transactions to be less than arm's length. These provisions do not preclude a breach of fiduciary duty claim, though, because the Complaint plainly alleges that Plaintiffs placed their trust in Defendant Mohajir to hire a manager "in a fair and reasonable manner" and that he alone was tasked with making the hire. *Complaint*, ¶¶ 77, 67. One party placing significant trust in another is sufficient

17

to plausibly allege the existence of a fiduciary duty and survive a motion to dismiss—even where a contract between the parties exists. *Tiberi v. CIGNA Corp.*, 89 F.3d 1423, 1432 (10th Cir. 1996). At the very least, Plaintiffs should be permitted to pursue discovery on these issues to prove the existence of a fiduciary duty.

### IV.     Conclusion

All parties to this lawsuit are not parties to the operating agreements which Defendant relies on to attempt to compel arbitration.  For the purpose of a Motion to Dismiss, the allegations in the Complaint are taken as true, and Defendant's Motion fails because the facts pled establish the stated causes of action. Plaintiffs respectfully request the Court deny Defendant Mohajir's Motion to Compel Arbitration or Alternative Dismiss for Failure to State a Claim in its entirety.

Respectfully submitted,

*/s/ James R. Jarrow*

| | |
|---|---|
| James R. Jarrow, Esq. | KS #14287 |
| Brett M. Simon, Esq., | KS # 27150 |

BAKER STERCHI COWDEN & RICE LLC
9393 West 110th Street, Suite 500
Overland Park, Kansas 66210
Telephone:     (913) 451-6774
Facsimile:     (816) 472-0288
Email: jarrow@bscr-law.com
        bsimon@bscr-law.com

ATTORNEY FOR PLAINTIFFS

## CERTICIATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed on this 18th day of January, 2022 with the Clerk of the Court via the CM/ECF filing system which sent notification of said filing to all counsel of record.

_/s/ James R. Jarrow_