**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **GARY OBORNY, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.   6:21-CV-01290** |
| | ) | |
| **JEFF MOHAJIR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO COMPEL ARBITRATION**
**OR, ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant Jeff Mohajir respectfully submits the following Reply in Support of the Motion to Compel Arbitration Or, Alternatively, to Dismiss Plaintiffs' Complaint:

I.       **REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Plaintiffs' claims should be arbitrated under the broad, unambiguous arbitration provision in the 40 Energy Operating Agreement as well as the arbitration provision in the inter-related Ascent Operating Agreement.

*The 40 Energy Operating Agreement – Arbitration Provision*

a. **Defendant Jeff Mohajir has standing to enforce the Arbitration Provision in the 40 Energy Operating Agreement**

Plaintiffs' argument that Defendant Mohajir lacks standing to invoke the arbitration provision in the 40 Energy Operating Agreement is without merit.  "Federal law recognizes that a non-party may enforce an arbitration provision in certain circumstances, included intended beneficiaries such as an agent or employee of a party." *Lutz v. Right Time Holdings, LLC*, No. 07-1039-JTM, 2008 WL 782644, at *2 (D. Kan. Mar. 21, 2008), citing *Britton v. Coop Banking Group,* 4 F.3d 742, 745–46 (9th Cir.1993)(permitting manager of LLC to enforce arbitration

agreement).  Although <u>Defendant Jeff Mohajir, individually</u>, is not a signatory to the 40 Energy Operating Agreement, he signed the document in his capacity as a Manager of Ascent Management Group, LLC, itself the designated Manager (and a Member) of 40 Energy LLC. When an individual signs an arbitration agreement in his capacity as a Manager of the company, that individual is permitted to invoke the arbitration agreement.  *Lutz*, 2008 WL 782644 at *2. Under K.S.A. § 17-7693(b), every manager of a limited liability company is considered an agent of the company for the purpose of its business and affairs.  *Id*.  Plaintiffs' reliance on the *Housh v. Dinovo Investments* case is misplaced—it is distinguishable from this case for the same reasons discussed by this Court in the *Lutz* case, and moreover the *Housh* case "recognized that an arbitration clause may serve to protect the employees and agents who were not directly parties to the agreement itself." *Lutz*, 2008 WL 782644 at *2, discussing *Housh*, 2003 WL 1119526 at *5-6.  Accordingly, Defendant Mohajir has standing to invoke and enforce the arbitration provision in the 40 Energy Operating Agreement.  See also *Kan-Pak, LLC v. Hydroxyl Systems, Inc.*, 2008 WL 11380090, *3 (D. Kan. Nov. 13, 2008)(permitting non-party agent of corporate entity which was a party to arbitration agreement to enforce the arbitration agreement).

Clearly, Defendant Mohajir has standing to <u>invoke and enforce</u> the arbitration provision in the 40 Energy Operating Agreement, because he signed it in his capacity as a Manager of Ascent, itself the Manager of 40 Energy.  Likewise, Plaintiffs are <u>bound</u> by the arbitration provision and required to arbitrate the claims herein.  As admitted by Plaintiffs on p. 4 of their brief, all but one of the Plaintiffs are Members of 40 Energy, are bound by the 40 Energy Operating Agreement and are therefore required to arbitrate their claims if the claims are within the scope of the arbitration provision.  The lone non-signatory, Gary Oborny, individually, is

2

bound by the arbitration agreement for the same reason Defendant Jeff Mohajir may enforce it—Mr. Oborny is the controlling Manager of Ascent, itself the Manager of 40 Energy.

### b. Plaintiffs' claims fall within the scope of the arbitration agreement

The arbitration provision in the 40 Energy Operating Agreement is extremely broad, encompassing "*[a]ny controversy or claim arising out of or relating to this Agreement*." (emphasis added)  The caselaw relied upon by Plaintiffs actually weighs strongly in favor of mandating arbitration in this case: "Courts have generally interpreted language such as "arising from or in connection with" quite expansively." *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, 12 F.4th 1212, 1220 (10th Cir. 2021), citing  *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (a broad arbitration clause covers not only those issues "arising under" the contract "*but even those issues with any connection to the contract*" or "*matters that touch the underlying contract [.]*" (ellipsis and internal quotation marks omitted; emphasis added); see also *Clean Air & Water Sys., LLC v. Larkin Excavating, Inc.*, No. 10-2442-RDR, 2010 WL 4737812, at *2 (D. Kan. Nov. 16, 2010), (collecting cases).

Here, the language "arising out of or relating to" is substantially identical and, accordingly, the Court should interpret the provision expansively to include not only claims which "arise under" the 40 Energy Operating Agreement but claims with any connection to, or which touch, the 40 Energy Operating Agreement.  Clearly, Plaintiffs' claims arise under, concern, or touch the 40 Energy Operating Agreement.  The 40 Energy Operating Agreement is referenced, cited, quoted or implicated throughout the Complaint and a portion of the 40 Energy Operating Agreement is attached to the Complaint.[1]  Plaintiffs' claims are premised upon two

---

[1] See, e.g., Complaint, ¶¶18, 20, 24-30, 36-44, 66, 71, 80, 87, which either quote, cite, reference, or implicate the 40 Energy Operating Agreement.  See also Exhibit 1 to the Complaint, which is a portion of the 40 Energy Operating Agreement.

basic allegations: (1) that Defendant Mohajir failed to transfer the Revelation Assets into 40 Energy as allegedly required by Section 3.2 of the 40 Energy Operating Agreement; and (2) that Defendant Mohajir hired MEA, an affiliate, to manage 40 Energy's oil and gas holdings on terms that are allegedly in violation of Section 5.11 of the 40 Energy Operating Agreement.   The Complaint explicitly refers to Defendant Mohajir signing the 40 Energy Operating Agreement in his capacity as a Manager of Ascent, the designated Manager of 40 Energy.[2]   The Complaint alleges that Defendant Mohajir was contractually required under Section 3.2 of the 40 Energy Operating Agreement to transfer the Revelation Assets to 40 Energy "within 30 days of the execution" of the 40 Energy Operating Agreement.[3]   The Revelation Assets are defined and set forth in "Exhibit B" to the 40 Energy Operating Agreement.[4]   Plaintiffs allege Defendant Mohajir benefitted from an "additional ownership percentage in 40 Energy" per the 40 Energy Operating Agreement in connection with his alleged obligation under Section 3.2 of the 40 Energy Operating Agreement to transfer the Revelation Assets to 40 Energy.[5]   The Complaint alleges Plaintiffs became members of 40 Energy, i.e. signatories to the 40 Energy Operating Agreement, based upon allegedly unlawful representations or other conduct of Defendant Mohajir.[6]   Plaintiffs allege their damages can only be remedied by the Court ordering "specific performance of [Defendant Mohajir's] contractual obligations" under the 40 Energy Operating Agreement (and Ascent Operating Agreement).[7]   Moreover, Plaintiffs assert this Court has personal jurisdiction over Defendant Mohajir, in part, because he "acted as a director of a Kansas

---

[2] Complaint, ¶37-38.
[3] Complaint, ¶39.
[4] Complaint, ¶¶40-41; Exhibit B to Complaint.
[5] Complaint, ¶¶44.
[6] Complaint, ¶¶53,
[7] Complaint, ¶56 and prayers for relief under each Count.

corporation which was directly involved in the wrongful acts" described in the Complaint—referring to 40 Energy, Ascent, or possibly both.[8]

Plaintiffs' assertion that the claims and allegations in this matter have no relation to the 40 Energy Operating Agreement is patently false. If Defendant Mohajir enumerated all of the respects in which Plaintiffs' claims arise out of, concern, or touch the 40 Energy Operating Agreement, it would essentially require Defendant Mohajir to "copy-and-paste" Plaintiffs' entire Complaint into this brief. Plainly, Plaintiffs' claims fall within the broad scope of the arbitration provision in the 40 Energy Operating Agreement and this Court should grant Defendant Mohajir's Motion to Compel Arbitration.

### c. Plaintiffs' allegations based upon "pre-contract" conduct are arbitrable

Plaintiffs' argument this lawsuit is not subject to arbitration because some of the alleged improper conduct of Defendant Mohajir pre-dated the arbitration agreement is unavailing. In *Dodson*, the plaintiff brought claims against the defendant which included misrepresentation and tortious interference with prospective business advantage claims akin to those asserted by Plaintiffs here. 12 F.4th 1212, 1222-1223 (10th Cir. (Kan.) 2021). The *Dodson* plaintiff sought to avoid arbitration by arguing its claims concerned conduct of the defendant which pre-dated the parties' arbitration agreement, specifically representations or certifications of equipment which the defendant performed prior to the execution of the contract. *Id*. The District Court—and ultimately the Tenth Circuit—rejected the *Dodson* plaintiff's argument for reasons directly germane to this case. First, the *Dodson* court held the plaintiff's claims all contained at least one element (the alleged injury) which arose after the contract was executed. *Id*. Accordingly, the claims actually accrued after the contract was executed. *Id*., citing *City of Wichita v. U.S.*

---

[8] Complaint, ¶14.

*Gypsum Co.*, 72 F.3d 1491, 1498 (10th Cir. 1996) ("Kansas law provides a cause of action does not accrue until substantial injury is caused or, if the injury is not immediately reasonably ascertainable, until the injury becomes reasonably ascertainable to the injured party.")  Thus, the *Dodson* plaintiff's claims which were premised on pre-contract representations or other pre-contract conduct did not cause harm (and thereby accrue) until after the parties' contract was executed, bringing the claims within the scope of the arbitration provision in the contract. *Id.*

Similarly, here Plaintiffs' claims concerning the Revelation Assets necessarily post-date the 40 Energy Operating Agreement and arbitration agreement, inasmuch as Plaintiffs' Complaint alleges Defendant Mohajir failed to transfer the Revelation Assets within 30 days of execution of the 40 Energy Operating agreement as allegedly required by Section 3.2 of that agreement.[9]  Plaintiffs allege their damage related to the failure to transfer the Revelation Assets accrued after the 40 Energy Operating Agreement was signed, explicitly alleging the Revelation Assets produced revenue and increased in value "after the 40 Energy Amended and Restated Operating Agreement was Executed," which revenues and value were lost and will continue to accrue in the future.[10]  Accordingly, even if Defendant Mohajir made pre-contract misrepresentations concerning the transfer of the Revelation Assets, Plaintiffs' claims are based upon the ***alleged contractual obligation under the 40 Energy Operating Agreement to transfer the Revelation Assets*** and seek damages ***solely arising from lost income and value after the 40 Energy Operating Agreement was signed***.  Thus, the claims accrued post-contract and Plaintiffs' arguments otherwise are without merit.

With regard to Plaintiffs' claims that Defendant Mohajir improperly retained MEA to manage 40 Energy's oil and gas holdings, these claims accrued after the 40 Energy Operating

---

[9] Complaint, ¶39.
[10] Complaint, ¶¶45-56.

Agreement was executed as well. Plaintiffs allege the MEA Services Agreement was executed after the execution of the 40 Energy Operating Agreement, on terms which violate Section 5.11 of the 40 Energy Operating Agreement, necessarily positioning those claims as post-dating the 40 Energy Operating Agreement.[11] Moreover, Plaintiffs allege that 40 Energy's payments to MEA after the contract was signed were excessive and unreasonable, as purportedly "later discovered" by Plaintiff Oborny after soliciting a bid from another services provider.[12]

The *Dodson* court also held that, even if the claims solely concerned alleged conduct which pre-dated the arbitration agreement, "we would still reject the arguments because the arbitration clause has no temporal element." *Id.* Likewise, there is no temporal element in the arbitration agreement in the 40 Energy Operating Agreement. To paraphrase the *Dodson* court: All that is required for a dispute to be arbitrable is that it be one "***arising out of or relating to this Agreement***." Plaintiffs' claims concerning the transfer of the Revelation Assets, or the MEA Services Agreement, clearly arise out of, and relate to, the 40 Energy Operating Agreement, as set forth above, regardless of whether Defendant Mohajir's alleged misconduct wholly or partially occurred prior to the execution of the 40 Energy Operating Agreement and accordingly those claims fall within the scope of the arbitration agreement therein.

---

[11] Complaint, ¶¶64-69.

[12] Defendant Mohajir disputes all of Plaintiffs' allegations concerning the MEA Services Agreement. The MEA Service Agreement is reasonable and encompasses professionals in many disciplines, including accounting, engineering, geology, regulatory compliance and economics, whereas the bid solicited by Plaintiff Oborny only concerns accounting functions. Moreover, prior to presenting the flawed bid cited in the Complaint, Plaintiff Oborny requested that Defendant Mohajir (or MEA) split the $100,000 per month management fee 50/50 with Oborny even though he would not be providing any of the tasks encompassed in the MEA Service Agreement. Defendant Mohajir will present ample evidence to challenge these allegations at the appropriate time, but is mindful in this Motion that Plaintiffs' allegations in the Complaint are accepted by the Court at face-value.

***<u>The Ascent Operating Agreement – Arbitration Provision</u>***

Plaintiffs' claims are subject to the Ascent Operating Agreement, and/or the 40 Energy Arbitration Agreement, as discussed elsewhere herein and in Defendant Mohajir's initial Motion. Plaintiffs' argument concerning the parties to the two Operating Agreements is circular and actually emphasizes why arbitration should be mandated in this case under either (or both) agreement(s). As Plaintiffs' Complaint—and the 40 Energy and Ascent Operating Agreements— make clear, the allegations and claims in this matter concern both 40 Energy and Ascent. Ascent is the designated Manager of 40 Energy, per Section 5.1 of the 40 Energy Operating Agreement. Ascent is also the majority Member of 40 Energy, per "Exhibit A" in the 40 Energy Operating Agreement. Under the 40 Energy Operating Agreement, Section 3.2, the contractual obligation to transfer the Revelation Assets belongs to Ascent, not Defendant Mohajir. As noted by Plaintiffs, the 40 Energy Operating Agreement is signed on behalf of Ascent by Defendant Mohajir, in his capacity as one of two Managers of Ascent. As also noted by Plaintiffs, Plaintiff Gary Oborny is a signatory and controlling Manager-Member of Ascent but not a signatory to the 40 Energy Operating Agreement in his individual capacity. Likewise, the non-Oborny Plaintiffs are all signatories and members of 40 Energy but not Ascent.

Notably, the 40 Energy Operating Agreement is dated December 18, 2020[13] and likewise the Ascent Operating Agreement (as Amended) is dated December 18, 2020.[14] In this regard, the 40 Energy and Ascent Operating Agreements, though separate documents, are inter-related parts of a single transaction. Both the 40 Energy and Ascent Operating Agreements contain broad arbitration provisions—expansively interpreted by this Court as noted above—concerning "any controversy or claim arising out of or relating to" each Agreement. Under Kansas law, where

---

[13] See 40 Energy Operating Agreement, p. 22.
[14] See Ascent Operating Agreement, p. 20, opening paragraph.

two inter-related agreements are executed on or near the same date, between and among the same or related parties, concerning the same or related matters, and the agreements "further" one another, it is permissible to compel arbitration even if there is no arbitration provision in one of the related agreements whatsoever. *Consolidated Brokers Ins. Svcs., Inc. v. Pan-American Assur. Co., Inc.*, 427 F.Supp.2d 1074, 1082-1083 (D. Kan. 2006).

The Ascent Operating Agreement and 40 Energy Operating Agreement both contain an arbitration provision but more importantly they function in an inter-related manner consistent with a finding that the parties agreed to arbitrate this dispute.  This Court has held that "if parties can 'avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified.'" *Kan-Pak, LLC v. Hydroxyl Sys., Inc.*, No. 08-1079-WEB, 2008 WL 11380090, at *3 (D. Kan. Nov. 13, 2008), quoting *Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*, 920 F.2d 1269 (6th Cir. 1990).  Here, Plaintiffs attempt to side-step the parties' clear intent to arbitrate disputes relating to 40 Energy and/or Ascent, through an overly technical argument that some Plaintiffs are direct signatories to either the 40 Energy Operating Agreement or Ascent, but not the other.  When taken in tandem, the 40 Energy and Ascent Operating Agreements are inter-related parts of a single transaction, and every party to this lawsuit is a party to one (or more) of those agreements, whether in a representative or individual capacity.  The Court should compel arbitration in this matter, rejecting Plaintiffs' strained efforts to avoid the parties' clear intent to arbitrate this dispute.

Contrary to Plaintiffs' overly narrow and self-serving interpretation of the Complaint, a facial review of the issues in this lawsuit reveals that issues pertaining to both the 40 Energy and Ascent Operating Agreements are implicated.  In this regard, it is worth noting the differing

postures of Plaintiff Oborny and the rest of the Plaintiffs (hereinafter the "Investor Plaintiffs").

Plaintiff Oborny, individually, is not a Member of 40 Energy like the Investor Plaintiffs—but he

is a Member and the controlling 51% Manager of Ascent.[15]   Per the 40 Energy Operating

Agreement, Section 3.2, Ascent is obligated to transfer the Revelation Assets to 40 Energy.

Accordingly, the Investor Plaintiffs' claim regarding the Revelation Assets is, in reality, directed

to Ascent, which Plaintiff Oborny controls. Likewise, Ascent is the party which executed the

Services Contract with MEA per Section 5.11 of the 40 Energy Operating Agreement, so the

Investor Plaintiffs' purported dispute also concerns Plaintiff Oborny as the controlling 51%

Manager-Member of Ascent.  In this light, the conspicuous absence of either 40 Energy or

Ascent to this lawsuit—and the fixation on Defendant Mohajir individually—is notable.

Plainly, the parties involved in the 40 Energy venture—including its Manager-Member,

Ascent—have some business issues to work out among themselves, but this lawsuit is not the

appropriate vehicle.  Instead, the Court should order the parties to arbitrate the dispute as agreed

in both the 40 Energy and Ascent Operating Agreements.

### *Plaintiffs' Reliance on K.S.A. 17-7672(a) is Misplaced*

Lastly, Plaintiffs offer the unsupported theory that K.S.A. 17-7672(a), part of the Kansas

Revised Limited Liability Company Act, supplants and supersedes the FAA and the strong

public policy weighing in favor of enforcing arbitration agreements.  Plaintiffs candidly admit

the argument has found no support in reported caselaw and also is contrary to the fundamental

principle of the Limited Liability Act, i.e. that the Act is a set of "default rules" which

contracting parties can amend to suit their needs.  Kansas courts have routinely compelled parties

to arbitrate disputes arising under, or relating to, LLC operating agreements.  See, e.g., *In re*

---

[15] See Amendment to Ascent Operating Agreement.

*John Q. Hammons Fall 2006, LLC*, 2018 WL 10483503, *1-2 (Bankr. D. Kan. 2018)(compelling arbitration under LLC operating agreement); *Hildebrand v. Par Network, Inc.*, 2009 WL 4508578, *2 (D. Kan. 2009)(same); *Jackman v. Jackman*, 2006 WL 3792019, *1-2 (D. Kan. Dec. 21, 2006)(same). Clearly, K.S.A. 17-7672(a) is a "default" rule which states parties "may" bring disputes concerning LLCs, their members, or managers, or related disputes, in state court, subject to arbitration or other dispute resolution agreements the parties may reach.

Moreover, to the extent Plaintiffs imply that K.S.A. 17-7672(a) precludes contracting parties from arbitrating disputes involving limited liability companies, the FAA would preempt such a limitation. See *Southland Corp. v. Keating*, 465 U.S. 1, 17 (1984)(FAA preempted state law limiting arbitration provisions in franchise agreements; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."). Defendant Mohajir asks this Court to decline the invitation to become the first court in Kansas to find that K.S.A. 17-7672(a) preempts the FAA and nullifies the parties' arbitration agreements in the 40 Energy Operating Agreement and Ascent Operating Agreement.

## II.   REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### a.   The 40 Energy Operating Agreement directly contradicts Plaintiffs' claims, warranting dismissal

Plaintiffs admit the 40 Energy Operating Agreement provides that Ascent, as the "Manager," must contribute the Revelation Assets to 40 Energy. It is also admitted that Ascent was the designated Manager of 40 Energy and that Plaintiff Gary Oborny is the controlling 51% Manager of Ascent. Accordingly, the fact Plaintiffs have sued Defendant Mohajir, in his individual capacity, is inapposite and contrary to the parties' written agreement. Incredibly,

Plaintiffs state the Complaint does not allege Defendant Mohajir "breached said operating agreement," but the Complaint is based almost entirely on Defendant Mohajir's alleged failure to transfer the Revelation Assets per the 40 Energy Operating Agreement and states, "***Absent specific performance of [Defendant Mohajir's] contractual obligations***"—which could only refer to the 40 Energy Operating Agreement and Ascent Operating Agreement—Plaintiffs' alleged damages will continue.[16]    Further, Plaintiffs' Complaint cites Section 5.3 of the 40 Energy Operating Agreement, "Restrictions on Authority of the Manager," stating the Manager has no fiduciary duty, duty of loyalty, or duty of care to 40 Energy, other than the duty to act in good faith and in accordance with principles of fair dealing—duties which Plaintiffs allege elsewhere in the Complaint that Defendant Mohajir breached.[17]    Contrary to Plaintiffs' efforts to blithely ignore the issue, it is factually and legally significant that the claims against Defendant Mohajir, individually, are in reality the contractual obligation of Ascent, which Plaintiff Oborny controls.    Plaintiffs have in effect sued the wrong party and the Complaint should be dismissed for that reason.  *Kestrel Holdings I, LLC v. Learjet, Inc.*, 316 F.Supp.2d 1071, 1077 (D. Kan. 2004)(dismissing fraud claim based upon legal distinction between contractual duties and rights conferred upon a contracting party which is a corporate entity as compared to an individual)

      **b.**        **Plaintiffs' Breach of Oral Contract claim fails as a matter of law**

For a century, Kansas has acknowledged the "elementary" rule that "an oral agreement entered into prior or contemporaneously with a written agreement is merged in the latter." *Setchell v. Reed*, 153 Kan. 818, 113 P.2d 1050, 1051 (1941), citing *Underwood v. Sharp*, 120 Kan. 250, 242 P. 1021, 1021 (1926).  The terms of the agreement are determined by the written agreement, not the prior oral negotiations which led to the written agreement.  *Frogge v. Belford*,

---

[16] See Complaint, ¶56 and prayers for relief under each Count.
[17] See, e.g., Complaint, ¶36, 75, 78.

211 P.2d 49, 51-52 (Kan. 1949).  "Another elementary and related rule is that parol evidence is not admissible to vary the terms of a written instrument." *McKay v. Clark*, 178 P.2d 679, 684 (Kan. 1947)

In the response brief, Plaintiffs argue the 40 Energy Operating Agreement does not memorialize or integrate the parties' alleged prior oral negotiations concerning the transfer of the Revelation Assets.  But this is belied by Plaintiffs' Complaint, which explicitly alleges that Defendant Mohajir's "oral promise" led to the drafting and execution of the 40 Energy Operating Agreement.[18]  Moreover, the terms of the purported oral promise—to transfer the Revelation Assets to 40 Energy within 30 days of execution of the 40 Energy Operating Agreement—are mirrored in the text of Section 3.2 of the 40 Energy Operating Agreement.[19]  Accordingly, Plaintiffs' own Complaint on its face alleges that Defendant Mohajir's "oral promise" directly led to the drafting and execution of the parties' written agreement.  The terms of the written agreement require Ascent, as the Manager, to transfer the Revelation Assets within 30 days of the execution of the agreement.  The written agreement clearly integrates, subsumes, and supersedes the oral negotiations which Plaintiffs themselves allege led to the written agreement. The parties—all sophisticated in matter of business—memorialized their intent that Ascent, not Defendant Mohajir, had the contractual duty to transfer the Revelation Assets to 40 Energy.  In this regard, Plaintiffs' feigned indignation that Defendant Mohajir seeks to use Ascent as a "scapegoat" misses the mark: On the contrary, Defendant Mohajir requests the Court review the plain language of the written agreements between the parties and recognize the fundamental and fatal flaws in Plaintiffs' Complaint.  The breach of oral contract claim fails as a matter of Kansas law and should be dismissed. *Frogge*, 211 P.2d at 51-52.

---

[18] Complaint, ¶¶86-87.
[19] Complaint, ¶¶39.

**c.**      **Plaintiffs' Intentional Interference with a Prospective Business Advantage claim fails as a matter of law**

Plaintiffs' response, taken in tandem with the flawed Complaint, only emphasizes the "square peg/round hole" conundrum presented by Plaintiffs' claim for intentional interference with a prospective business advantage ("IIPBA").  Plaintiffs' Complaint alleges Defendant Mohajir breached <u>contractual duties</u> under the 40 Energy Operating Agreement – specifically, that Defendant Mohajir failed to transfer the Revelation Assets as allegedly required by Section 3.2 and that Defendant Mohajir hired an affiliate entity, MEA, to manage 40 Energy's oil and gas holdings on unreasonable terms in violation of Section 5.11.  Plaintiffs request "specific performance" of Defendant Mohajir's contractual duties.   If the Court takes Plaintiffs' allegations at face value, as it must on a Rule 12(b)(6) Motion, then the IIPBA claim simply cannot stand because Defendant Mohajir cannot "tortiously interfere" with a contract to which he is a party or has contractual obligations. *Hoxeng v. Topeka Broadcomm, Inc.*, 911 F.Supp. 1323, 1336 (D. Kan. 1996), quoting *Dow Chem. Corp. v. Weevil–Cide Co.,* 897 F.2d 481, 487-488 (10th Cir.1990). Plaintiffs and Defendant Mohajir must be "third parties"—essentially contractual strangers to one another—in order for a tort claim to lie where a contractual claim does not.  Plaintiffs cannot have it both ways:  Either Defendant Mohajir is an "insider" to the 40 Energy/Ascent transaction and owes contractual duties, or he is an "outsider" to the transaction and may plausibly interfere with it as required by Kansas law.  *Dow Chemical Corp.*, 897 F.2d at 488-489 (reversing district court; intentional interference claim failed as a matter of law because of the contractual relationship or privity between the claimant and the alleged interfering defendant).  But even if the Court were to infer from the Complaint that Defendant Mohajir's alleged failures occurred in his capacity as the non-controlling manager of Ascent—the Manager and majority owner of 40 Energy obligated by the 40 Energy Operating Agreement to

14

perform the acts referenced in Plaintiffs' Complaint—this would likewise fail to state a claim for IIPBA. *Battenfield of America Holding, Inc. v. Baird, Kurtz & Dobson*, 1999 WL 232915, \*4-5 (D. Kan. Feb. 5, 1999)(dismissing IIBPA claim asserted against individual employees or agents of the contracting parties).

Plaintiffs ignore the fundamental flaw in the IIPBA claim as it pertains to the hiring of MEA, alleged to be an affiliate of Defendant Mohajir, to manage the oil and gas assets of 40 Energy: The 40 Energy Operating Agreement expressly provides in Section 5.11 that it may enter into contracts with affiliates of the Managers and/or a Member, provided the terms are fair and reasonable.  The mere allegation that MEA's fees for managing 40 Energy's assets are not fair and reasonable does not rise to the level of conduct required for an IIPBA claim. An IIPBA claim "is predicated upon malicious conduct by the defendant." *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 151-152 (Kan. 2003). The 40 Energy Operating Agreement expressly provides for such contracts and moreover the Services Agreement itself provides a mechanism for oversight and remedial measures if the company believes the affiliate contract is not fair and reasonable. (See, e.g., Services Agreement, ***Exhibit 3 to Motion***, Section 5.1, "Termination") This only underscores the impropriety of Plaintiffs' asserting a tort claim in the midst of contract-based allegations.  Moreover, because the conduct to which Plaintiffs object was expressly authorized by the contract cited by Plaintiffs, it cannot rise to the level of tortious interference with the purported business advantage conveyed in the contract. See *Id*. (conduct with a legitimate business purpose or basis is not malicious and does not support an IIPBA claim).  Accordingly, Plaintiffs' deficient IIPBA claim should be dismissed.

15

**d.      Plaintiffs' Negligent Misrepresentation claim fails as a matter of law**

Plaintiffs' perfunctory response fails to address the fatal flaw presented in the Motion to Dismiss the negligent misrepresentation claim.   Under established Kansas law, a negligent misrepresentation claim "may only be based on a 'misrepresentation of pre-existing or present fact'" and "may not be based on an intention to perform an agreement" or a "future event." *Indy Lube Invs., L.L.C. v. Wal-Mart Stores, Inc.*, 199 F. Supp. 2d 1114, 1123 (D. Kan. 2002)(dismissing negligent misrepresentation claim based on allegation by defendant of completing future real estate contract), citing *Graphic Techs., Inc. v. Pitney Bowes, Inc.,* 998 F.Supp. 1174, 1179 (D.Kan.1998) and *Wilkinson v. Shoney's, Inc.,* 269 Kan. 194, 221, 4 P.3d 1149, 1167 (2000).

Here, Plaintiffs' claim is premised upon an alleged statement of future intent, that Defendant Mohajir represented that the "Revelation Assets **would be** transferred into 40 Energy[.]" (Complaint, ¶95, emphasis added)   Indeed, Plaintiffs echo the conditional, future nature of the alleged representation on page 15 of their brief ("When Defendant Mohajir represented the Revelation Assets *would be* transferred…").   The promise to transfer the Revelation Assets at a later date is clearly a "statement of intent to perform an agreement in the future" which "cannot form the basis of a negligent misrepresentation claim." *Bank Midwest, N.A. v. Millard*, No. 10-2387-JAR, 2012 WL 2583385, at *4 (D. Kan. July 3, 2012), citing Restatement (Second) of Torts, §552.   The conditional, future nature of the transfer of the Revelation Assets is underscored by Section 3.2 of the 40 Energy Operating Agreement, which provides that "Manager [Ascent] **will contribute** the Revelation Assets," which transfer was to occur "[w]ithin 30 days after the execution of this Agreement and subject to the satisfaction of any requirements from the Company's lender[.]"

16

Plaintiffs' negligent misrepresentation claim fails as a matter of law and should be dismissed.

### e.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

Plaintiffs' response underscores why the breach of fiduciary claim should be dismissed. Plaintiffs confirm that the source of the alleged fiduciary duty is the 40 Energy Operating Agreement, Section 5.3, which states in pertinent part that the "Manager and Company officers will have no fiduciary duty (including, but not limited to, any duty of loyalty or duty of care) to the Company or to any Member of the Company, except (1) a duty to act in good faith, (2) a general obligation of fair dealing with respect to the Company and its Business[.]"  This, per the 40 Energy Operating Agreement these limited fiduciary duties belong to the "Manager and Company officers."  The 40 Energy Operating Agreement defines "Manager" as Ascent, so it is Ascent which holds the listed fiduciary duties.  Plaintiff Gary Oborny is the 51% controlling Manager of Ascent; Defendant Mohajir is the minority 49% Manager of Ascent.  There is no allegation Defendant Mohajir is a "Company officer."  The 40 Energy Operating Agreement clearly reflects the parties' intentions to confer limited fiduciary obligations to Ascent, not Defendant Mohajir, so the breach of fiduciary duty claim is inapposite as to this Defendant.

Plaintiffs' breach of fiduciary duty claim also fails because the claim sounds in contract, not tort.  Plaintiffs' Complaint generally, and the breach of fiduciary duty claim specifically, are based on Defendant Mohajir's alleged breach of two provisions of the 40 Energy LLC Operating Agreement: (a) by allegedly failing to transfer the Revelation Assets into 40 Energy LLC as set forth in Section 3.2; and (b) by allegedly hiring MEA to manage 40 Energy LLC's oil and gas holdings on unfair and unreasonable terms in violation of Section 5.11.  There are no allegations that Defendant Mohajir's alleged conduct was in breach of some independent "fiduciary duty"

17

owed to Plaintiffs outside the referenced contracts and accordingly the claim should be dismissed. *Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1033 (D. Kan. 2018).

        **f.**        **The Quantum Meruit and Unjust Enrichment claims fail as a matter of law**

Plaintiffs admit the quantum meruit and unjust enrichment claims must be dismissed if a written contract governs the subject matter of the claim, but argue these equitable claims are pled "in the alternative" and should survive the pending Motion to Dismiss. But Plaintiffs' argument only emphasizes the irreconcilable inconsistencies of the Complaint. Plaintiffs' <u>allegations</u> against Defendant Mohajir entirely concern the transfer of the Revelation Assets and the hiring of MEA to manage 40 Energy's oil and gas holdings, matters which Plaintiffs admit are governed by Sections 3.2 and 5.11 of the 40 Energy Operating Agreement, respectively. But despite the admitted contractual origin of Plaintiffs' <u>allegations</u>, Plaintiffs' asserted <u>causes of action</u> conspicuously avoid invoking the written contract which governs the subject matter of this lawsuit. Plaintiffs admit that Defendant Mohajir, individually, is not directly a party to the written contracts at issue, but nonetheless allege in the Complaint that Defendant Mohajir, individually has contractual obligations to Plaintiffs which must be specifically enforced—then seek relief almost entirely in tort or in equity.[20]

The "elephant in the room" which Plaintiffs studiously avoid is that, because Ascent is the party contractually obligated to transfer the Revelation Assets and is the party which contracted with MEA, Plaintiffs' dispute is substantially a contractual dispute with <u>Ascent</u>, not Defendant Mohajir, individually. Of course, because Plaintiff Gary Oborny is the controlling, 51% Manager of Ascent, perhaps understandably he has not brought a lawsuit against himself or

---

[20] The lone exception, the breach of oral contract claim, fails for other reasons as set forth in the Motion and herein.

the entity he controls—revealing a conflict between Plaintiff Gary Oborny and the Investor Plaintiffs.  Plaintiffs' strained efforts to contort a business dispute between 40 Energy and its Manager, Ascent, into a lawsuit against Defendant Mohajir, individually has resulted in the deficient Complaint which fails to assert any claim upon which relief may be granted.

## III.      CONCLUSION

Based upon the foregoing arguments and authorities, Defendant respectfully requests the Court enter an Order compelling arbitration and dismissing or staying this action.  Alternatively, Defendant requests the Court dismiss Plaintiffs' Complaint for failure to state a claim under Rule 12(b)(6), and for such further and additional relief as the Court deems appropriate.

Respectfully submitted,

**FRANKE SCHULTZ & MULLEN, P.C.**

*/s/ John L. Mullen*

| | |
|---|---|
| John L. Mullen | KS #22994 |
| Christopher M. Harper | KS #23273 |

8900 Ward Parkway
Kansas City, Missouri 64114
(816) 421-7100 (Telephone)
(816) 421-7915 (Facsimile)
*jmullen@fsmlawfirm.com*
*charper@fsmlawfirm.com*
**ATTORNEYS FOR DEFENDANT**
**JEFF MOHAJIR**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above
and foregoing filed and delivered via the court's
electronic notification system and emailed
this 24th day of January, 2022, to:

James Jarrow, Esq.
Brett Simon, Esq.
Joanna Orscheln, Esq.
BAKER STERCHI COWDEN & RICE, LLC
9393 W. 110th St., Ste. 500
Overland Park, Kansas 66210
(913) 451-6774 (Telephone)
(816) 472-0288 (Fax)
*jarrow@bscr-law.com*
*bsimon@bscr-law.com*
*jorscheln@bscr-law.com*
**ATTORNEYS FOR PLAINTIFFS**


*/s/ John L. Mullen*_____
**ATTORNEY FOR DEFENDANT**
**JEFF MOHAJIR**